Timothy J. Silverman, Esq. [SBN 145264]
SOLOMON GRINDLE SILVERMAN & WINTRINGER
12651 High Bluff Dr., Suite 300
San Diego, California 92130
Telephone: (858) 793-8500
Facsimile: (858) 793-8263

Attorneys for Secured Creditor
Stanford Federal Credit Union,
c/o Systems & Services Technologies, Inc.

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION**

| | |
|---|---|
| In re:<br><br>Tom Markou,<br><br>Debtor | Case No.: 10-44354-LJT<br><br>**OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**<br><br>341(a) Meeting of Creditors<br><br>Date: June 24, 2010<br>Time: 11:00 a.m. |

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Comes now Stanford Federal Credit Union, c/o Systems & Services Technologies, Inc., its successors and/or assigns, a secured creditor, party in interest ("Claimant") and files its Objection to Confirmation of Debtors' Chapter 13 Plan of Reorganization ("Plan") on the grounds that the Plan fails to comply with 11 U.S.C. §§1325 (a)(1), (a)(3), (a)(4), (a)(5)(B)(i) and (a)(5)(B)(ii), and Fed.R. Bankr. P., Rule 3015, and in support thereof would respectfully show the Court as follows:

**STATEMENT OF FACTS**

1. The above-styled Debtor filed a voluntary petition under Chapter 13 of Title 11, United States Bankruptcy Code, on April 16, 2010 ("Filing Date").

2. The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §1334 and this is a core proceeding under 28 U.S.C. §157(b)(2)(G).

3. Movant is the owner and holder of a Retail Installment Contract ("Contract") in the original principal sum of $51,329.51, dated April 18, 2007 and executed by Tom Markou. Claimant is secured under the Contract by a properly perfected first lien security interest in a 2007 DODGE Charger-V8 Sedan 4D SRT-8 - VIN: 2B3LA73W77H678996 ("Collateral"). True and correct copies of the Contract and of the Certificate of Title are attached hereto, marked Exhibits "1" and "2," respectively, and are incorporated herein by this reference.

4. The total debt due and owing to Claimant as of the Filing Date was $31,590.55 as evidenced by Claimant's Proof of Claim and Debtor is indebted to Claimant as of this date in the amount of $31,590.55.

**CREDITOR HAS NOT BEEN ADEQUATELY PROVIDED FOR AS A SECURED CREDITOR**

5. The Plan provides for payment of $24,450.00 as a secured claim to Claimant.

6. Bankruptcy Code §506(a)(2), amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("Act"), provides that "If the debtor is an individual in a case under chapter 7 or 13, such value with respect to the personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction of costs of sale or marketing. With respect to the property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for the property of that kind considering the age and condition of the property at the time value is determined." Claimant contends that the amendment of §506(a)(2) overturns those opinions that had permitted valuations based upon wholesale valuations including the Supreme Court's *Rash* decision, by requiring retail values to be used in chapters 7 and 13, at least as to property acquired by the debtor for personal, family, or household use.

Case: 10-44354 Doc# 12 Filed: 05/26/10 Entered: 05/26/10 15:11:52 Page 2 of 10

7. As a result, the appropriate valuation to use in determining Claimant's claim should be Kelly Blue Book retail valuation. Based upon the Kelley Blue Book retail valuation, Claimant is informed and believes that the retail value of the property is $28,900.00. Thus, the Plan understates the value of the Collateral. A true and correct copy of the Kelley Blue Book valuation is attached hereto as Exhibit "3," and is incorporated herein by this reference.

8. Claimant objects to confirmation of the Plan pursuant to 11 U.S.C. §1325 because the Plan proposes an unreasonable length of time in which to pay Claimant's claim by extending the maturity date for repayment under the Contract. The rate of depreciation of the Collateral will exceed the proposed plan payments.

9. Claimant has been forced to file this Objection to Confirmation to protect its interest in the Collateral and has agreed to pay the undersigned counsel reasonable attorney fees. Claimant requests that Debtor be required to pay such attorneys fees as required by the Contract.

10. This objection is accompanied by the attached exhibits, all of which are incorporated by reference as if fully rewritten herein.

11. Claimant respectfully reserves the right to make further objections to the Plan prior to and at the time of the hearing thereon.

WHEREFORE, PREMISES CONSIDERED, Claimant prays that (1) this Court deny confirmation of the Plan; (2) pay Claimant's reasonable attorney's fees and costs; and (3) grant Claimant such other and further relief, at law and in equity, as is just.

Dated: May 26, 2010                                  Respectfully Submitted,

                                                     SOLOMON GRINDLE SILVERMAN &
                                                     WINTRINGER

                                                     By: /s/ Timothy J. Silverman
                                                     Timothy J. Silverman
                                                     Local Counsel for Stanford Federal Credit
                                                     Union, c/o Systems & Services Technologies,
                                                     Inc.

## .TAIL INSTALLMENT SALE CONTRACT - SIMPLE IN... CHARGE

| Buyer (and Co-Buyer) Name and Address | Creditor - Seller (Name and Address) |
| --- | --- |
| TOM MIRKOU<br>40765 VACA DRIVE<br>FREMONT ALAMEDA CA 94539 | HARTZHEIM DODGE-SAN JOSE<br>1050 CAPITOL EXPWY AUTOMALL<br>SAN JOSE CA 95136 |

[illegible]

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
| --- | --- | --- | --- | --- | --- |
| NEW | 2007 | DODGE CHARGER | 101 | 2B3LA73W77H678296 | [X] personal, family or household<br>[ ] business or commercial |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
| --- | --- | --- | --- | --- |
| 6.50 % | $ 12696.13 (e) | $ 51329.51 | $64025.64 (e) | $ 66525.64 (e) |

Total Sale Price includes down payment of $ 2500.00

(e) means an estimate

YOUR PAYMENT SCHEDULE WILL BE:

| Number of Payments | Amount of Payments | When Payments Are Due |
| --- | --- | --- |
| One Payment of | N/A | N/A |
| One Payment of | N/A | N/A |
| 83 Payments | 762.21 | Monthly, beginning 05/18/2007 |
| Payments | N/A | Monthly, beginning |
| One Final Payment | 762.21 | DUE BY 04/18/2014 |

Late Charge. [illegible] Prepayment. [illegible] Security Interest. [illegible] Additional Information: [illegible]

### ITEMIZATION OF THE AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

1. Total Cash Price
   - A. Cash Price of Motor Vehicle and Accessories $ 47348.00 (A)
     - 1. Cash Price Vehicle $ 46499.00
     - 2. Cash Price Accessories $ 849.00 LO-JACK
     - 3. Other: Describe N/A $ N/A; Describe N/A $ N/A
   - B. Document Preparation Fee $ 55.00 (B)
   - C. Smog Fee Paid to Seller $ N/A (C)
   - D. (Optional) Theft Deterrent Device N/A $ N/A (D)
   - E. (Optional) Theft Deterrent Device N/A $ N/A (E)
   - F. (Optional) Surface Protection Product N/A $ N/A (F)
   - G. (Optional) Surface Protection Product N/A $ N/A (G)
   - H. Sales Tax $ 4147.76 (H)
   - I. Electronic Vehicle Registration or Transfer Fee $ N/A (I)
   - J. (Optional) Service Contract THE MECHANIC $ 1899.00 (J)
   - K. (Optional) Service Contract N/A $ N/A (K)
   - L. (Optional) Service Contract N/A $ N/A (L)
   - M. Prior Credit or Lease Balance N/A $ N/A (M)
   - N. (Optional) Gap Contract N/A $ N/A (N)
   - O. (Optional) Used Vehicle Contract Cancellation Option Agreement $ N/A (O)
   - P. Other N/A $ N/A (P)
   - Total Cash Price (A through P) $ 53449.76 (1)
2. Amounts Paid to Public Officials
   - A. License Fees ESTIMATED $ 307.00 (A)
   - B. Registration/Transfer/Titling Fees $ 64.00 (B)
   - C. California Tire Fees $ 8.75 (C)
   - D. Other N/A $ N/A (D)
   - Total Official Fees (A through D) $ 379.75 (2)
3. Amount Paid to Insurance Companies $ N/A (3)
4. Smog Certification or Exemption Fee Paid to State $ N/A (4)
5. Subtotal (1 through 4) $ 53829.51 (5)
6. Total Downpayment
   - A. Agreed Trade-In Value $ N/A (A)
   - B. Less Prior Credit or Lease Balance $ N/A (B)
   - C. Net Trade-In $ N/A (C)
   - D. Deferred Downpayment $ N/A (D)
   - E. Manufacturer's Rebate $ 2500.00 (E)
   - F. Other N/A $ N/A (F)
   - G. Cash $ N/A (G)
   - Total Downpayment (C through G) $ 2500.00 (6)
7. Amount Financed (5 less 6) $ 51329.51 (7)

[illegible] Proceeds of Loan from N/A; Amount $ N/A; Finance Charge $ N/A; Total $ N/A; Payments N/A; Payable in N/A $ N/A

**AUTO BROKER FEE DISCLOSURE**
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked.
[ ] Name of autobroker receiving fee, if applicable: N/A

SELLER'S RIGHT TO CANCEL [illegible]

Buyer X [signature] Co-Buyer X N/A

### STATEMENT OF INSURANCE

NOTICE. [illegible]

Vehicle Insurance: N/A

Total Vehicle Insurance Premiums $ N/A

[illegible]

Buyer X [signature] Co-Buyer X N/A Seller X [signature]

**Application for Optional Credit Insurance**

Credit Life N/A; Credit Disability N/A; Total Credit Insurance Premiums $ N/A; Insurance Company Name N/A; Home Office Address N/A

[illegible]

You are applying for the credit insurance marked above. Your signature below means that you agree that: (1) You are not eligible for insurance if you have reached your 65th birthday. (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective Date. (3) Only the Primary Buyer is eligible for disability insurance. DISABILITY INSURANCE MAY NOT COVER CONDITIONS FOR WHICH YOU HAVE SEEN A DOCTOR OR CHIROPRACTOR IN THE LAST 6 MONTHS (Refer to "Total Disabilities Not Covered" in your policy for details.)

You want to buy the credit insurance.

Buyer Signature X N/A — Co-Buyer Signature X N/A

OPTIONAL GAP CONTRACT. [illegible] Term N/A; Name of Gap Contract N/A. You want to buy a gap contract. Buyer N/A

OPTIONAL SERVICE CONTRACT(S) [illegible]
- (i) Company THE MECHANIC; Term 72 Mos. or 75000 Miles
- (ii) Company N/A; Term N/A Mos. or N/A Miles
- (iii) Company N/A; Term N/A Mos. or N/A Miles

Buyer X [signature]

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X [signature] Co-Buyer Signs X N/A

OPTION: [ ] You pay no finance charge if the Amount Financed, item 7, is paid in full on or before N/A Year ... SELLERS INITIALS ...

[illegible]

Buyer X [signature] X N/A

Representations of Buyer: Seller has relied on the truth and accuracy of the information provided by you in connection with the Trade-In Vehicle. You represent that you have given a true payoff amount on the vehicle traded in. If the payoff amount is more than the amount shown above in item 6B as "Prior Credit or Lease Balance," you must pay Seller the excess on demand. If the payoff amount is less than the amount shown above in item 6B as "Prior Credit or Lease Balance," Seller will refund the difference to you.

Buyer X [signature] Co-Buyer X N/A

Notice to buyer: (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

[illegible]

Buyer Signature X [signature] Co-Buyer Signature X N/A

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION [illegible]

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION CLAUSE ON THE REVERSE SIDE, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X [signature] Date 04/18/07 Co-Buyer Signature X N/A Date

[illegible]

Other Owner Signature X N/A Address N/A

GUARANTY: [illegible]

Guarantor X N/A Date N/A Guarantor X N/A Date N/A

Address N/A Address N/A

Seller: HARTZHEIM DODGE-SAN JOSE Date 04/18/07 By X TED YEE Title F&I MNGR

LAW FORM NO. 553-CA-ARB [illegible]

EXHIBIT 1

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Creditor-Seller may receive part of the Finance Charge.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. As of the date of your payment, if the minimum finance charge is greater than the earned Finance Charge, you may be charged the difference; the minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000, (2) $50 if the original Amount Financed is more than $1,000 but not more than $2,000, or (3) $75 if the original Amount Financed is more than $2,000.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

   **GAP LIABILITY NOTICE**
   In the event of theft or damage to your vehicle that results in a total loss, there may be a gap between the amount you owe under this contract and the proceeds of your insurance settlement and deductible. THIS CONTRACT PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. An optional gap contract (debt cancellation contract) for coverage of the gap amount may be offered for an additional charge.

   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
   You give us a security interest in:
   - The vehicle and all parts or goods installed on it;
   - All money or goods received (proceeds) for the vehicle;
   - All insurance, maintenance, service, or other contracts we finance for you; and
   - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

   This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law allows. You will make sure the title shows our security interest (lien) in the vehicle.
   d. **Insurance you must have on the vehicle.**
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge equal to the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract.
   Default means:
   - You do not pay any payment on time;
   - You start a proceeding in bankruptcy or one is started against you or your property;
   - The vehicle is lost, damaged or destroyed; or
   - You break any agreements in this contract.

   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** You will pay our reasonable costs to collect what you owe, including attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts. You agree to pay a charge not to exceed $15 if any check you give to us is dishonored.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). You may redeem the vehicle by paying all you owe, or you may have the right to reinstate this contract and redeem the vehicle by paying past due payments and any late charges, providing proof of insurance, and/or taking other action to cure the default. We will provide you all notices required by law to tell you when and how much to pay and/or what action you must take to redeem the vehicle.
   f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate shown on the front of this contract, not to exceed the highest rate permitted by law, until you pay.
   g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **WARRANTIES SELLER DISCLAIMS**
   **If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
   This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed.

5. **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
   **Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

6. **Applicable Law**
   Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

7. **Warranties of Buyer.** You promise you have given true and correct information in your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit application.

You waive the provisions of Civil Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

**CREDIT DISABILITY INSURANCE NOTICE**
**CLAIM PROCEDURE**

If you become disabled, you must tell us right away. (You are advised to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us as the location where we would like to be notified.) We will tell you where to get claim forms. You must send in the completed form to the insurance company as soon as possible and tell us as soon as you do.

If your disability insurance covers all of your missed payment(s), WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have any money due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.

If the insurance company pays the claim within the three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within the three calendar months or accepts the claim within the three calendar months on a partial disability and pays less than for a total disability, you will have 35 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between the past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given.

If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send in these completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we will then be able to take action to collect or foreclose or repossess any collateral you may have given.

**Seller's Right to Cancel**

a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit and assign the contract. You agree that if Seller is unable to assign the contract to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel the contract.

b. Seller shall give you written notice (or in any other manner in which actual notice is given to you) within 10 days of the date this contract is signed if Seller elects to cancel. Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give back to you all consideration received by Seller, including any trade-in vehicle.

c. If you do not immediately return the vehicle, you shall be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.

d. While the vehicle is in your possession, all terms of the contract, including those relating to use of the vehicle and insurance for the vehicle, shall be in full force and you shall assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage to the vehicle until the vehicle is returned to Seller.

**ARBITRATION CLAUSE**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship [illegible]

[illegible] Federal Arbitration Act (9 U.S.C. § 1 et seq.) [illegible]

[illegible]

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only if the "personal, family, or household" box in the "Primary Use for Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

| | | |
|---|---|---|
| Seller assigns its interest in this contract to STANFORD FCU ELTS NSS PO BX 10690 PALO ALTO, CA 94303 | [signature] | Assigned with recourse / Assigned without recourse / Assigned with limited recourse |
| Seller [illegible] DODGE | By | Title APR 1 4 2007 |

Form No. 553-CA-ARB [illegible]

# LIMITED POWER OF ATTORNEY

KNOW ALL PERSONS BY THESES PRESENTS, that **STANFORD FEDERAL CREDIT UNION** together with its respective affiliate, and subsidiary corporations and entities (collectively "**Lienholder**") having its principal place of business at 1860 Embarcadero Road, Palo Alto, CA 94303 , in connection with certain security interests and liens created in the name of **Lienholder**, has and hereby affirms that it has made, constituted and appointed, and by these presents does make, constitute and appoint Systems & Services Technologies, Inc. ("SST" or "attorney-in-fact"), having its principal place of business at 4315 Pickett Road, St. Joseph, Missouri 64503, **Lienholder's** true and lawful attorney-in-fact and in **Lienholder's** name, place and stead to act solely for the purpose of performing any or all of the acts described herein in connection with any account serviced by SST pursuant to the Servicing Agreement dated as of July 1, 2009.

FIRST: To execute and/or endorse certificates of title, applications for certificates of title or other documents necessary or appropriate to evidence the assignment, sale, transfer, acquisition or disposition of vehicles or **Lienholder's** interest in vehicles including, but not limited to, vehicles to be sold at auction, or to be otherwise liquidated ("Title Administration Services"). In furtherance hereof, Lienholder specifically authorizes SST to contract with any person, in any manner and upon terms and conditions deemed, in the sole discretion of said attorney-in-fact, necessary or appropriate to facilitate Title Administration Services, including but not limited to electronic lien and title ("ELT") processing and administration.

SECOND: To endorse, sign, deliver and deposit any and all checks, drafts or instruments of deposits issued by obligors, insurance companies, vendors or third parties. Such instruments may only be executed and deposited by the attorney-in-fact if the same represent funds paid on any account serviced by the attorney-in-fact pursuant to the above-referenced Servicing Agreement.

THIRD: To execute and/or endorse any loan agreement, promissory note, security agreement, financing statement, certificate of title or other document, instrument or agreement, or any amendment, modification or supplement of any of the foregoing, and perform any act and covenant in any way which **Lienholder** itself could do which is necessary or appropriate to modify, amend, renew, extend, terminate and/or extinguish: (i) any and all liens and security interests granted to or created in favor of **Lienholder** in or affecting vehicles; or (ii) any indebtedness secured by any such lien or security interest or any right or obligation of the obligor of such indebtedness secured by a vehicle, in each case upon such terms and conditions deemed, in the sole discretion of said attorney-in-fact, necessary or appropriate in connection with such modification, amendment, renewal extension, termination and/or extinguishment.

FOURTH: To agree and to contract with any person, in any manner and upon terms and conditions deemed, in the sole discretion of said attorney-in-fact, necessary or appropriate for the accomplishment of any such modification, amendment, renewal, extension, termination and/or extinguishment of any such lien, security interest, indebtedness, right or obligation with respect to vehicles, to perform, rescind, reform or modify any such agreement or contract or any similar agreement or contract made by or on behalf of **Lienholder**; to execute acknowledge, seal and deliver any contract, agreement, certificate of title or other document, agreement or contract or any similar agreement or document creating, evidencing, securing or secured by any such lien, security interest, indebtedness, right or obligation; and to take all such other actions and steps, pay or receive such moneys and to execute, acknowledge, seal and deliver all such other certificates, documents and agreements as said attorney-in-fact may deem necessary or appropriate to consummate any such modification, amendment, renewal, extension, termination and/or extinguishment of any such security interest, lien, indebtedness, right or obligation or in furtherance of any of the transactions contemplated by the foregoing.

FIFTH: To commence a legal proceeding in the name of **Lienholder** to enforce a receivable, or file a claim in any obligor insolvency action. If attorney-in-fact exercises this right, **Lienholder** shall thereupon be deemed to have automatically assigned such receivable to attorney-in-fact, which assignment shall be solely for the purpose of collection/recovery.

SIXTH: To execute, deliver and file documents in the name of **Lienholder** with a court, administrative or regulatory agency or other body in response to any government seizure or impoundment of vehicles, or similar actions affecting vehicles.

SEVENTH: To execute, deliver and file claims, rebuttals and other documents in the name of **Lienholder** related to any claim with respect to a consumer insurance, warranty or credit enhancement product associated with a vehicle or account serviced pursuant to the Agreement, if applicable.

EIGHTH: With full and unqualified authority to delegate any or all of the foregoing powers to any person or persons whom said attorney-in-fact shall select.

NINTH: This Power of Attorney shall not be affected by the subsequent dissolution or disability of **Lienholder** or its authorized representatives.

TENTH: To induce any third party to act hereunder, **Lienholder** hereby agrees that any third party receiving a duly executed copy or facsimile of this instrument may act hereunder, and that any notice of revocation or termination hereof or other revocation or termination hereof by operation of law shall be ineffective as to such third party.

**[THE BALANCE OF THIS PAGE IS BLANK]**

Case: 10-44354 Doc# 12 Filed: 05/26/10 Entered: 05/26/10 15:11:52 Page 7 of 10

IN WITNESS WHEREOF, the undersigned has executed this Power of Attorney on behalf of **Lienholder** as of this 1st day of July, 2009.

**STANFORD FEDERAL CREDIT UNION**

By: [signature]
Name: John R. Davis
Its: Pres/CEO

ACKNOWLEDGMENT

STATE OF California )
) ss
COUNTY OF Santa Clara )

This instrument was acknowledged, sworn to and subscribed before me as of the date above written by John R. Davis on behalf of **Stanford Federal Credit Union,** as its duly authorized representative.

[signature]
Notary Public

My commission expires:
Feb. 8, 2011

J. M. RODRIGUEZ
Commission # 1715547
Notary Public - California
Santa Clara County
My Comm. Expires Feb 8, 2011

STATE OF CALIFORNIA

# CERTIFICATE OF TITLE

N68081031FD

VEHICLE HISTORY

AUTOMOBILE

VEHICLE ID NUMBER 2B3LA73W77H678996

YR MODEL 2007

MAKE DODG

PLATE NUMBER 5ZKX391

BODY TYPE MODEL 4D

AX

UNLADEN WEIGHT

FUEL G

TRANSFER DATE

FEES PAID NONE

REGISTRATION EXPIRATION DATE 04/20/2009

YR 1ST SOLD 2007

CLASS MW

*YR

MO PY

EQUIPMT/TRUST NUMBER

ISSUE DATE 11/08/08

MOTORCYCLE ENGINE NUMBER

ODOMETER DATE 04/18/2007

ODOMETER READING 101 MI

ACTUAL MILEAGE

REGISTERED OWNER(S)

MARKOU TOM
40765 VACA DR
FREMONT CA 94539

-----

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW.

**I certify (or declare) under penalty of perjury** under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a. ____________ DATE X ____________ SIGNATURE OF REGISTERED OWNER

1b. ____________ DATE X ____________ SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [ ] (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked.

**WARNING** ☐ Odometer reading is not the actual mileage. ☐ Mileage exceeds the odometer mechanical limits

***I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.***

| DATE | TRANSFEROR (SELLER) SIGNATURE(S) | DATE | TRANSFEREE (BUYER) SIGNATURE(S) |
|---|---|---|---|
| | X | | X |

| PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY | PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY |
|---|---|
| | |

***IMPORTANT READ CAREFULLY***

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

STANFORD FCU
PO BX 10690
PALO ALTO CA 94303

2. X ____________
Signature releases interest in vehicle. (Company names must be countersigned)
Release Date ____________

021323 CA 114721816

REG. 17.30BS (REV.7/07)

KEEP IN A SAFE PLACE - VOID IF ALTERED

EXHIBIT 2



advertisement

DODGE

Charger RT has the best horsepower and torque in its class[1]

## 2007 Dodge Charger SRT8 Sedan 4D

BLUE BOOK® SUGGESTED RETAIL VALUE

| Condition | Value |
|---|---|
| ✓ Excellent (Selected) | $28,900 |

**Suggested Retail Value Assumes Excellent Condition...** *More*

### Vehicle Highlights

**Mileage:** 49,000
**Engine:** V8 6.1 Liter HEMI
**Transmission:** Automatic
**Drivetrain:** RWD

### Selected Equipment

**Standard**

| | | |
|---|---|---|
| Stability Control | Cruise Control | Leather |
| Air Conditioning | AM/FM Stereo | Dual Power Seats |
| Power Steering | Single Compact Disc | Rear Spoiler |
| Power Windows | Dual Front Air Bags | Premium Wheels 19"+ |
| Power Door Locks | ABS (4-Wheel) | |
| Tilt Wheel | Traction Control | |

### Blue Book Suggested Retail Value

Kelley Blue Book Suggested Retail Value is representative of dealers' asking prices for a used car, and the starting point for negotiation between a consumer and a dealer. This Suggested Retail Value assumes that the vehicle has been fully reconditioned and has a clean title history, but has not been certified in accordance with any Certified Pre-Owned (CPO) program the automaker may offer (for which it may or may not qualify, according to factors such as vehicle age and mileage). This value also takes into account the dealers' profit, costs for advertising, sales commissions and other costs of doing business. The final sale price will likely be less depending on the vehicle's actual condition, popularity, type of warranty offered and local market conditions.

### Vehicle Condition Ratings

✓ **Excellent** (Selected)

$28,900

- Looks new, is in excellent mechanical condition and needs no reconditioning.
- Never had any paint or body work and is free of rust.
- Clean title history and will pass a smog and safety inspection.
- Engine compartment is clean, with no fluid leaks and is free of any wear or visible defects.
- Complete and verifiable service records.

Less than 5% of all used vehicles fall into this category.

* California 5/16/2010

advertisement

Close Window

7

Case: 10-44354 Doc# 12 Filed: 05/26/10 Entered: 05/26/10 15:11:52 Page 10 of 10